## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JERMAINE JONES,<br>        Plaintiff, | No. 3:21-cv-1358 (SRU) |
| v. | |
| ANGEL QUIROS, et al.,<br>        Defendants. | |

## <u>INITIAL REVIEW ORDER RE: AMENDED COMPLAINT</u>

Jermaine Jones ("Jones"), a sentenced state prisoner currently confined at MacDougall-Walker Correctional Institution ("MWCI") filed this *pro se* complaint under 42 U.S.C. § 1983, alleging constitutional claims against Department of Correction Commissioner Angel Quiros ("Quiros") in his official capacity, and against Dr. Naqui, Nurse Stork, Nurse Caplan, Nurse Burns, Nurse Boilard, Jane Doe #1 ("Michelle B."), Jane Doe #2 ("Cheryl P."), Jane Doe #3, Jane Doe #4 ("Nurse Caroline"), Jane Doe #5, and Medical Officer Hollie ("Hollie") in their individual capacities. Compl., Doc. No. 1. Specifically, Mr. Jones alleged violations of the Eighth and Fourteenth Amendments based on deliberate indifference to his medical needs. *Id.* at 1.

On initial review, I concluded that Mr. Jones had not alleged a plausible Fourteenth Amendment or Eighth Amendment claim. *See* Initial Review Order, Doc. No. 9, at 11. I afforded Mr. Jones one opportunity to file an amended complaint that corrected the deficiencies identified in my initial review order. *Id.*

On June 21, 2022, Mr. Jones timely filed his amended complaint against the same defendants asserting Eighth Amendment violations based on medical indifference. Am. Compl., Doc. No. 12. Mr. Jones's amended complaint also attached grievances and medical reports about

his medical condition. *Id.* at 21–45.

After initial review of the amended complaint, I conclude that Mr. Jones has still failed to state a plausible claim under section 1983.

## I.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief.   *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) ("A *pro se* complaint must allege enough facts to state a claim to relief that is plausible on its face.") (cleaned up).

## II.     FACTUAL BACKGROUND[1]

Because the amended complaint recites the same allegations as the original complaint, familiarity with the facts is presumed and will not be repeated. That said, Mr. Jones attached new records to his amended complaint, including inmate request forms, his Level-1 Grievance, and medical records. Am. Compl., Doc. No. 12, at 21–45. Thus, I will summarize those additional facts below.

During the summer of 2013, Mr. Jones injured his right shoulder while playing basketball at the MWCI. *Id.* at ¶ 11. Mr. Jones did not see medical staff until several weeks after his injury; and after he was examined, the nurses reached no conclusion regarding the injury. *Id.* Since that injury, Mr. Jones has continued to request treatment, but to no avail. *Id.* at ¶¶ 11–18.

Mr. Jones wrote an inmate request form, dated August 12, 2019, requesting surgery on his shoulder. *Id.* at 28. He explained that he was in pain, that "[t]his has been going on for 4 [years]" and that his shots and pain medications "are not doing anything." *Id.* In response, on September 22, 2019, Michelle B. wrote: "You are on the list to see your provider [Nurse] Stork[.]" *Id.*

In March 2020, Mr. Jones wrote to the MWCI medical unit about his pain both in his right shoulder and his colon (from a biopsy). *Id.* at 29. He was informed that the Prompt Care procedure was in place effective May 28, 2019 and was instructed sign up for Prompt Care in his housing unit. *Id.* at 29.

---

[1] The following allegations are taken from the amended complaint and considered to be true for purposes of this initial review.

Mr. Jones submitted another inmate request form on August 8, 2020, in which he requested to be seen by a new doctor for a skin rash (for which he had already been seen four times) and complained that his medication for pain in his right arm and shoulder "was not doing anything." *Id.* at 30. On August 28, 2020, Nurse Caplan responded by informing Mr. Jones that he had "been placed on [the] provider sick call list." *Id.*

In another inmate request form, dated October 6, 2020, Mr. Jones complained about not having received proper treatment for his rash and for his painful cyst condition in his right shoulder. *Id.* at 31. On October 7, 2020, Cheryl P. instructed Mr. Jones to "sign up for Prompt Care for further evaluation." *Id.*

Another inmate request form was submitted in October 2020, where Mr. Jones complained about his rash and the "cyst in [his] right shoulder" that was causing him serious pain "all the way down [his] arm to [his] right leg." *Id.* at 33. On October 26, 2020, Jane Doe #3 (who appears to be Nurse Cartwright) instructed him to sign up for Prompt Care in his unit because his "issues need to be addressed … prior to seeing [a medical doctor]." *Id.*

Mr. Jones submitted another inmate request form on November 20, 2020; this time requesting to see a "different doctor" and seeking different pain medication for the serious pain he was experiencing. *Id.* at 34. Nurse Caroline's response, dated November 24, 2020, instructed Mr. Jones to "sign up for Prompt Care on Thursday." *Id.*

On December 20, 2020, Mr. Jones wrote to Nurse Caplan about not yet receiving pain medication that she was supposed to order for his right shoulder pain. *Id.* at 35. He stated that he "really need[ed] something stronger for the pain until [he could] get to UCONN" and asked if

4

she could give him something else for the pain. *Id.* Four days later, on December 24, 2020, Nurse

Caplan responded to Mr. Jones as follows:

> Mr. Jones thank you for writing me. You will have to wait to see [orthopedics]. The
> problem is that all NSAIDS or anti-inflammatory medication interact[] with your
> mental health medication. Your x-ray of your shoulder from 2019 had no significant
> findings. I will order an x-ray of your neck because of the numbness you are
> describing. We can try a topical anti-inflammatory cream 2–4 times a day. After
> placing on shoulder wash your hands with soap [and] water.

*Id.*

Shortly thereafter, on January 8, 2021, Mr. Jones filed a Level-1 Grievance. He

complained about his rash and the "serious pain and numbness" in his right hand and shoulder.

*Id.* at 37. He explained that he had pain "everyday all day," that his "pain pills" were not

working, that he "neede[d] to be seen by another doctor" and "be put on some opiates" until he

could see a doctor "to tell [him] the next step in treating this injury." *Id.* That grievance was

returned without disposition on January 31, 2021 by Jane Doe #5, who wrote "I did place you on

your providers list. In the future please write one issue on request." *Id.*

Nine months later, on September 29, 2021, Mr. Jones submitted an inmate request form

where he described that he was "still experiencing serious pain all through [his] right side

shoulder down to [his] hand with numbness, and tingling all through the hand." *Id.* at 32. Mr.

Jones stated that the pain was so significant that he could barely "work in school" or type. *Id.* He

requested to be put on pain management. *Id.* In a response, dated October 1, 2021, Nurse Sofia

instructed him to sign up for Prompt Care "Thursday morning for Friday." *Id.*

Mr. Jones's medical records show that he had an initial visit with an orthopedist on April

1, 2022. *Id.* at 38. The orthopedist noted that he had "right shoulder pain and symptoms of right

upper extremity radiculopathy," that he may have symptoms of "subacromial impingement," and

that his spinal x-ray showed arthritis. *Id.* at p. 44. The orthopedist recommended an MRI of the cervical spine to evaluate for nerve compression and for Mr. Jones "to try Aleve" to help with his radicular and shoulder pain. *Id.*

## III.    DISCUSSION

I incorporate herein the relevant standards for the statute of limitations and equitable tolling, the Eighth Amendment, and official capacity claims already set forth in my initial review order. *See* Initial Review Order, Doc. No. 9, at 5–11.

A.    Statute of Limitations and Equitable Tolling

On initial review, I dismissed Mr. Jones's Eighth Amendment deliberate indifference claims against Nurse Burns, Nurse Boilard, Hollie, and Dr. Naqui because any alleged deliberate indifference by those defendants had accrued before September 2018 and were therefore barred by the statute of limitations. *Id.* at 5–7. Furthermore, I held that Mr. Jones's allegations failed to support tolling the statute of limitations. *Id.* Specifically, I observed that no alleged facts indicated that Mr. Jones retained a continuing medical treatment relationship with Nurse Burns, Nurse Boilard, Hollie, or Dr. Naqui, who would thereby owe him a continuing duty related to his medical care or pain relief; nor had Mr. Jones alleged facts to suggest that any of those defendants intentionally concealed any fact from Mr. Jones related his medical needs. *Id.* at 7. I afforded Mr. Jones one opportunity to amend his complaint to allege facts that would support tolling the statute of limitations. *Id.*

In his amended complaint, Mr. Jones has not alleged any facts to alter my decision regarding tolling of the statute limitations in this matter. Moreover, the exhibits attached to his amended complaint do not suggest that Mr. Jones had a continuing medical treatment

relationship with Nurse Burns, Nurse Boilard, Hollie, or Dr. Naqui extending beyond September 23, 2018. *See* Am. Compl., Doc. No. 12, at 21–45. Nor does the record indicate that any of those defendants intentionally concealed any fact from Mr. Jones related to his medical needs. *Id.*

Accordingly, I **dismiss** as time barred the Eighth Amendment claims asserted against Nurse Burns, Nurse Boilard, Hollie, and Dr. Naqui.

B.      Eighth Amendment Claims

1.      *Personal Capacity Claims*

On initial review, I considered whether Mr. Jones had alleged any plausible Eighth Amendment claims against Nurse Stork, Michelle B., Nurse Caplan, Cheryl P., Jane Doe #3, Nurse Caroline, and Jane Doe #5 (collectively, "the defendants") in their individual capacities based on alleged medical deprivations that occurred between August 12, 2019 and January 31, 2021. Initial Review Order, Doc. No. 9, at 8–10. I liberally construed Mr. Jones's allegations to satisfy the objective element of the Eighth Amendment analysis. *Id.* at 9–10. I noted that Mr. Jones alleged that he has "ongoing extreme-severe bodily pain" in his right shoulder that makes writing difficult for him, and other cases suggest that allegations of "severe pain … [and] reduced mobility …" in the shoulder are sufficient to raise a material issue of fact about a serious medical need. *Id.* at 10 (citing *Sereika v. Patel*, 411 F. Supp. 2d 397, 406 (S.D.N.Y. 2006)).

Regarding the subjective prong, I determined that Mr. Jones had not alleged any plausible basis to support an allegation of deliberate indifference by any of the defendants. *Id.* at 10. I explained that he had not alleged what the defendants failed to do; any conduct by the defendants to delay providing or facilitating medical treatment after becoming aware of his medical needs; or any facts about what the defendants said in response to his writing, or even what he had

included in his writings to the MWCI medical unit. *Id.* I instructed Mr. Jones that he could amend his complaint to allege facts and/or attach documents that would support his deliberate indifference claims against the defendants. *Id.* In filing his amended complaint, Mr. Jones did submit additional documents. But those additional records still do not save his Eighth Amendment claim. At best, those documents only show that Mr. Jones's complaint against the defendants is in essence a disagreement with the defendants' medical judgment regarding his treatment needs.

Generally, an inmate's disagreement with a medical provider about his medical treatment is not sufficient to state an Eighth Amendment violation. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *Hill v. Curcione,* 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment.") (cleaned up); *see also Gonzalez v. Sarreck*, 2011 WL 5051341 at *18 (S.D.N.Y. Oct. 24, 2011) (noting "disagreements over medications, diagnostic techniques, forms of treatment, or the need for specialists or the timing of their intervention are insufficient under [section] 1983.") (cleaned up). A medical provider may be deliberately indifferent, however, by consciously providing an inmate with "an easier and less efficacious" treatment plan, particularly if the provider does so because of ulterior motives, such as improper monetary incentives. *Chance*, 143 F.3d at 703–04; *see also Braham v. Perelmuter*, 2017 WL 3222532, at *16–17 (D. Conn. July 28, 2017). Put differently, a medical provider may be deliberately indifferent if the choice of treatment did not derive from sound medical judgment. *See Chance*, 143 F.3d at 703–04. "Whether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case." *Id.* at 703.

8

The present record reflects that Mr. Jones received timely responses to his inmate requests and Level-1 Grievance, that the defendants addressed his requests for medical attention for his right shoulder and/or pain, and that Mr. Jones did receive medical treatment. No facts suggest that any defendant was not acting according to sound medical judgment or was aware that Mr. Jones would suffer serious harm as a result of informing him that he had been placed on the provider list (Michelle B., Nurse Caplan, Jane Doe #5), instructing him to sign up for Prompt Care (Cheryl P., Jane Doe #3, and Nurse Caroline), or explaining his treatment plan (Nurse Caplan) in responding to Mr. Jones's inmate requests. *Morales-Rojas v. Ruiz*, 2019 WL 1025245, at *6 (D. Conn. Mar. 4, 2019) (explaining that a "defendant must have been actually aware of a substantial risk that the inmate would suffer serious harm as a result of his or her actions or inactions and have disregarded that risk."). Mr. Jones's amended complaint raises no inference that the defendants had the ability to provide with him more timely or different treatment and medication for his pain but consciously failed to do so. *Warwick v. Doe*, 2020 WL 2768804, at *5 (D. Conn. May 27, 2020) (noting that "in the absence of any facts suggesting that [defendant] actually had and failed to exercise the power to get [plaintiff] in to see a dental surgeon sooner" plaintiff's allegations "amount[ed] to negligence at most, which is a far cry from the criminal recklessness required to sustain a deliberate indifference claim."). Thus, Mr. Jones's amended complaint raises at most a claim of negligence or medical malpractice, which is not sufficient to support a claim of deliberate indifference. *See id.* at *5–*6.

I also note that Mr. Jones has not alleged any facts about conduct by Nurse Stork, and his exhibits do not reflect that she was aware of, but ignored, his medical needs for his right shoulder and pain. "It is well settled in this Circuit that personal involvement of defendants in alleged

constitutional deprivations is a prerequisite to an award of damages under [section] 1983."

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (cleaned up). That is true for supervisory

officials, too. *See Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020) (explaining that to

"hold a state official liable under [section] 1983, a plaintiff must plead and prove the elements of

the underlying constitutional violation directly against the official without relying on a special

test for supervisory liability"). Thus, Mr. Jones has not alleged a plausible claim of deliberate

indifference against Nurse Stork for damages.

Accordingly, I conclude that Mr. Jones has not alleged any plausible Eighth Amendment

violation against any of the defendants. Thus, I **dismiss** the Eighth Amendment claims against

Nurse Stork, Michelle B., Nurse Caplan, Cheryl P., Jane Doe #3, Nurse Caroline, and Jane Doe

#5 in their individual capacities.

### 2.    *Official Capacity Claims*

Mr. Jones alleges that he is suing Commissioner Quiros in his official capacity for

injunctive relief only. Am. Compl., Doc. No. 12, at ¶ 4. As I previously explained on prior initial

review, Mr. Jones cannot proceed on an official capacity claim for injunctive relief in the

absence of a plausible underlying constitutional violation. *See* Initial Review Order, Doc. No. 9,

at 11; *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010)

(collecting cases) ("Declaratory judgments and injunctions are remedies, not causes of action.").

Thus, Mr. Jones's claim against Quiros for injunctive relief is dismissed.

## IV.    CONCLUSION

For the foregoing reasons, I **dismiss with prejudice** Mr. Jones's amended complaint for

failure to state any plausible claims under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915A(b)(1). The

clerk is instructed to close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 2nd day of May 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge